## ¹ Forsythe *against* Price.

A tenant may support an action of trespass *quare clausum fregit*, against his landlord for an injury done to his way-going crop, after the expiration of the lease, and after he had removed from the premises.

ERROR to the common pleas of *Mifflin* county.

Jacob Price against Robert Forsythe. Trespass *quare clausum fregit.* This suit originated before a justice of the peace, and was brought into court by appeal.

The only question in the cause was, whether the action could be maintained by the tenant against his landlord, for an injury done to his way-going crop after the expiration of the lease, and after the plaintiff had quit the possession.

*Burnside,* president, instructed the jury that the plaintiff could maintain his action, and if the jury believed the facts proved, he was entitled to recover.

*J. Fisher,* for plaintiff in error, that the action could not be supported, cited 1 *Selw. N. P.* 365; 3 *Wils.* 403; 3 *Serg. & Rawle* 358; 2 *Yeates* 210; 4 *Term Rep.* 190; 10 *Wend.* 324.

*Candor,* for defendant in error.

This question was ruled in the affirmative in Stultz *v.* Dickey, 5 *Binn.* 285. There all the judges, on mature consideration, and after a *cur. adv. vult,* delivered their opinions *seriatim,* that the action will lie. Per Tilghman, Chief Justice, p. 288. " On a consideration of the cases, I take the law to be, that where one is entitled to the exclusive profits, or crop, growing on land, he may support trespass *quare clausum fregit.* Such right is equivalent to a right of possession," &c. &c. He then cites *Co. Litt.* 4; Harper *v.* Burbeck, 1 *Black. Rep.* 482, and Wilson *v.* Mackreth, 3 *Burr.* 1824, and reasons further in support of the action. Mr. Justice Yeates, p. 290, says " 2. It is admitted that an interest in the soil is not necessary to support an action of trespass. It is sufficient if the party has an interest in the profits." And cites Clap v. Draper, 4 *Mass. Term Rep.* 266, and shows that although the right of the soil was in another, the tenant has a separate interest in it, for a particular purpose, and when injured in the enjoyment of his particular use of the soil, he might maintain trespass for breaking his close, and Foot *v.* Colvin, 9 *Johns.* 216. Mr. Justice Brackenridge, p. 293–4, also reasons in favour of the action.

And in a later case, this is recognised as settled law, and it must

[Forsythe v. Price.]

now be considered as safely put to rest in Pennsylvania. In Biggs and Others *v.* Brown, 2 *Serg. & Rawle* 16, 17, per Tilghman, C. J. " Upon the state of the case, Brown would be entitled to recover on the authority of Stultz *v.* Dickey, 5 *Binn.* 285, in which it was decided by this court, that the tenant is entitled to the way-going crop, by the custom of the state, and may support the action of trespass against his landlord after his lease is expired."

And in New York, although the decisions are conflicting, yet they appear to preponderate in favour of the action. In Stewart *v.* Dougherty, 9 *Johns. Rep.* 112, see side page, 113, per Kent, C. J. " 3. The only remaining question is, whether the plaintiff is entitled to the action of trespass *quare clausum fregit,* for the loss of the crop? As he has an exclusive interest, I think the action will lie."

In Stuyvesant *v.* Tompkins *et al.,* 9 *Johns. Rep.* side, p. 62, note (*a*), the cases are ably collected. See also 6 *Bac. Abr.* 567; *Starkie on Evidence,* part 4, p. 1437; and notes (*c*) and (*a*); 2 *Wheaton's Selwyn,* 1016–7.

The opinion of the Court was delivered by

KENNEDY, J.—This was an action of trespass *quare clausum fregit,* brought originally before a justice of the peace, by the defendant in error, against the plaintiff in error, and thence by appeal into the court below. The plaintiff had been the tenant of a farm, including the *locus in quo,* belonging to the defendant below, under a lease from the latter for a term of two years, commencing on the 1st of April 1834. In the autumn of 1835, the plaintiff below sowed two of the fields on the farm with wheat, which was growing thereon in the spring of 1836, when his lease expired, and he removed from the farm, giving up the possession thereof to the defendant below. The trespass complained of is, that the defendant below, after the expiration of the lease, and before the wheat had ripened, either wilfully conducted his horses into the fields of wheat, or permitted them to break into the same, and there to consume and destroy the wheat of the plaintiff below, then growing, by eating and treading down the same.

That the plaintiff below was entitled to the wheat as his way-going crop, has not been denied; nor could his right thereto have been contested with any possible chance of success, after its having been settled and recognised repeatedly, by the decisions of this, as well as of every other court in the state, for half a century and more, last past, that the tenant in such case is entitled to the way-going crop. It is the settled law of the state, founded upon a custom that has prevailed and been general, at least, if not universal, throughout the same. See Diffadorffer *v.* Jones, decided in 1782, and cited in 5 *Binn.* 289, and 2 *Binn.* 487; Stultz *v.* Dickey, 5 *Binn.* 285; Briggs *v.* Brown, 2 *Serg. & Rawle* 14. But it was contended

by the counsel for the defendant, on the trial of the cause below, and has been so argued here, that the plaintiff below could not maintain trespass *quare clausum fregit*, after the expiration of the lease and his surrender of the possession to the defendant, for throwing down the fences around the wheat, whereby cattle and horses of the defendant below were let in to eat and tread it down, and thus consume and destroy it.   The last two cases, however, referred to above, establish fully and most clearly that the tenant, notwithstanding the expiration of the lease, and his having surrendered and given up the possession of the leased premises generally to the lessor, still retained such an interest in that part of the land, whereon the wheat was growing, and right to the possession thereof, as would enable him to maintain trespass, *quare clausum fregit*, against the lessor or any other person who should enter thereon, and take or destroy the grain so growing, or do any thing to the prejudice of the tenant's rights therein.   This is also in accordance with, and supported by, the principles of the common law, as laid down and settled in *Co. Lit.* 4 *b.*; *Dyer* 285, *Pl.* 40; Arnold *v.* Skeale, *Noy.* 149; and see, also, Parrot *v.* Bridges, 1 *Ventr.* 221-2; *Bac. Ab.* (by Wilson) tit. Trespass, 591.   Indeed, it would be strange if the law of the state, after having invested the tenant with the right to the way-going crop in such case, should not protect him completely in the enjoyment of it, to its fullest extent; and when violated, no matter by whom, should not also give him ample and adequate redress, as well as the means of securing and obtaining the benefit of it: *quando lex aliquid concedit, concedere videtur et id per quod devenitur.*   But the right of the tenant to the way-going crop being indisputably established in this state, the common law, as we have it from England, will enable him to maintain trespass *quare clausum fregit*, if his right in this respect be improperly interfered with; as where the reversioner, after the death of the *cestui que vie*, permits his cattle to trespass on the corn of the tenant for life; or even when the cattle trespass on the corn against the will of their owner, it has been held that trespass will lie against him. 2 *Roll. Abr.* 568, *l.* 15; *Com. Dig.*, tit. Trespass, (C. 1.)   This authority also meets another objection, that was raised on the trial below, and made the ground of exception here to the charge of the court.   The objection is, that unless the defendant below wilfully put his horses or cattle on the wheat of the plaintiff, this action cannot be maintained; and the defendant below further claiming that no evidence had been given tending to show that the defendant had done so, therefore requested the court to charge the jury that the plaintiff could not recover.   If the law were, in regard to this point, as the counsel for the defendant below contended, the evidence seems to go much further than he appears to think it does.  ·Indeed, some of it tends strongly to prove, that if the defendant did not wilfully put his horses on the wheat of the plaintiff, he at least threw down the fences around it, so that his

[Forsythe v. Price.]

horses might go into it, and destroy it by eating and treading it down. But it was sufficient to make him a trespasser, if his horses broke into the wheat even against his will, and destroyed it, because it was his duty to take care of his horses, and to restrain them from committing such trespass. Mr Chitty, in his treatise on Civil Pleading, vol. 1, 70, (second Lond. ed.,) speaking of trespass committed by means of "animals *mansuetæ naturæ,* as cows and sheep, says, as their propensity to rove is notorious, the owner is bound, at all events, to confine them on his own land, and if they escape, and commit a trespass on the land of another, unless through the defect of fences which the latter ought to repair, the owner is liable to an action of trespass, though he had no notice, in fact, of such propensity;" for which he cites a great many authorities in the margin. What is said in regard to *cows* and *sheep,* is equally applicable to *horses,* for cows and sheep are only mentioned by way of example, or illustration. In short, the law is well .settled on this point, by authorities which have never been contradicted, or even called in question, that if a man's cattle escape into the lands of another, though against his will, trespass will lie. See, in addition to the authorities cited by Mr Chitty, Pitts *v.* Collibeane, 2 *Roll. Abr.* 568; *Com. Dig.* tit. Trespass, (C. 1.) So if B. undertake to pasture the beast of A. or has the custody of it, and it trespasses upon the close of C., while in the charge of B., C. may have trespass against B. Bateman's case, *Clayt.* 33; *Bac. Abr.* 593 (by Wilson); 2 *Roll. Abr.* 546, *l.* 20; *Com. Dig.* tit Trespass, (C. 1.)

From the authorities, therefore, on this subject, as well as the reason and fitness of the thing, the plaintiff in error has no good ground to complain of the charge of the court below. In truth, it would seem to have been more favourable to him than he had any right to claim; for, from the language of the court, in their direction to the jury, on this point, the jury might readily have apprehended the court as instructing them, that the injury complained of by the plaintiff below, must have been *wantonly,* that is, as the jury might well have understood it, *wilfully* committed by the defendant, in order to entitle the plaintiff to recover. The words of the court are, " Does the evidence satisfy you that Forsythe was a wrongdoer, and did *wanton* injury to the crop of the plaintiff, either by his trespassing upon it, and throwing down the fences, or otherwise? If it does, the plaintiff is entitled to a verdict."

Judgment affirmed.