Potter Title & Trust Co., Appellant, *v.* Oswald
& Hess Co.

Argued April 10, 1936. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Arnold M. Replogle,* for appellant.

*James J. Burns, Jr.,* with him *Frank R. Sack,* of *Will-mann, Burns & Sack,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1936:

An ordinance of the City of Pittsburgh permits cattle to be driven through the streets between the hours of ten o'clock p. m. and eight o'clock a. m. Seventeen heifers belonging to defendant, which is engaged in the meat packing business, were being driven in the usual and customary way from the stockyards to defendant's plant about two o'clock in the morning by three experienced drovers along a city street when three of the herd bolted and disappeared in the darkness. They remained at large until about three o'clock in the afternoon, when they entered the yard of a dwelling house located at the dead end of a street. Arthur G. Hay, husband of Elizabeth Hay, approached the gate to the property for the purpose of closing it to prevent the escape of the cattle. As he was closing the gate the cattle rushed at him, knocked him down, trampled upon him and inflicted the injuries which caused his death. This action to recover damages was brought in behalf of his widow, a weak-minded person. A compulsory nonsuit was entered by the trial court, which on motion the court en banc refused to take off, and we have this appeal by the guardian of the widow.

It is argued in appellant's behalf that defendant's employees in charge of the cattle failed to follow and keep in sight the three which broke away, that there was no methodical search for them after they escaped and disappeared and that these failures in duty constituted negligence. It is further contended that Barrett, one of the three men who had them in charge and who seems to have been in authority over the other two, should have abandoned the rest of the herd and followed and kept in sight the three bolting heifers. Instead of immediately so doing Barrett waited a few moments until Jackson, another employee of defendant who was driving thirty hogs, came up, to acquaint him with what had happened. Barrett then started after the bolters, and Jackson and

the other two men drove the fourteen heifers and the hogs into defendant's plant where they were secured. Jackson and the other two men obtained an automobile and entered the hunt for the lost cattle. They were joined by at least one other man, so there were not less than five in the searching party. Barrett had the assistance of the police in a police radio car. All of the men continued in their efforts to locate the animals throughout the night and until they were captured after injuring the decedent Hay. It is also complained that more men were not detailed by the defendant for the search and that the animals were not located in a woods where they were grazing during some part of the day.

We are unable to see negligence in any of the circumstances recited. The heifers were being lawfully driven along the street during the time permitted by the city ordinance. It is not contended that the drovers were not competent or were too few in number. It cannot be said that when three cattle bolt from a herd of seventeen, it is negligence for one of those in charge of the herd not to run after the bolters until he has seen that the rest of the herd is secured. Nor do we think it is negligence to fail either to see where escaping cattle go in the darkness of night or to find them when searching for them. Runaway cattle are elusive in the nighttime and often difficult to locate by day. As to the complaint that the cattle remained at large in the city for six hours after the time allowed by the city ordinance, it is sufficient to say that their doing so was not due to any wilful purpose of defendant; on the contrary, its employees were all the time endeavoring to prevent them from being in the city's highways. That the searchers did not visit every nook in the large section of the city where the cattle were supposed to be could not be said to be negligence. They evidently used their best judgment in following up the information they received, diligently searching and visiting such places as seemed likely to them to harbor the

beasts. Those in the search were concerned not that the strays should be at large but that they should be captured.

*Goodman v. Gay*, 15 Pa. 188, is not in point in this controversy. In that case a horse was turned loose in the street. The opinion draws the distinction between such a circumstance and the case where a horse breaks out of a stable or takes fright and runs away in the street, saying (page 194) : "These things, the will or the strength of man cannot altogether prevent." Of course, there is more or less danger from cattle which are at large in public streets, but unless their presence is due to some negligent act, the owner of them cannot be held responsible for their conduct. Particularly is this so where, as in this case, their presence in the streets was initially lawful. We had a somewhat similar situation before us in *Rennie v. Schepps*, 297 Pa. 39, where a steer bolted and ran away from those in charge of it and caused injury. No recovery was allowed. *Douglas v. Converse*, 248 Pa. 232, involved a horse which had become unmanageable in a polo game, got out of his rider's control, rushed beyond the field boundaries and injured an onlooker. We there held there was no negligence on the part of the rider. The mere fact that an animal runs away does not establish negligence: *Jordan v. Eisele*, 273 Pa. 95; *Luks v. American Ice Co.*, 267 Pa. 337; *Coller v. Knox*, 222 Pa. 362.

We do not agree with appellant that this is a case for the application of the res ipsa loquitur doctrine: *Rennie v. Schepps*, supra. There was not sufficient evidence of defendant's negligence to justify the submission of the case to the jury.

Judgment affirmed.