Bender et ux. *v.* Welsh et al., Appellants.

Argued January 12, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Paul Lane Ives,* for appellants.

*James N. Lafferty,* with him *Raymond F. Stopper,* for appellees.

OPINION BY MR. JUSTICE DREW, March 23, 1942:

This action of trespass was brought to recover damages arising out of a collision between the automobile of one of the plaintiffs and a horse owned by defendants. After verdicts in plaintiffs' favor, defendants' motion for judgment n. o. v. was refused, and their motion for a new trial was discharged on plaintiffs' filing remittiturs for part of the damages awarded. Defendant appealed from the entry of judgments on the verdicts as reduced, assigning as error the court's action on both motions.

The facts disclosed by the evidence are undisputed. Mrs. Bender was being driven by her son in her husband's automobile along Paper Mill Road, Montgomery

County, at about eleven o'clock on the night of June 6, 1939. The weather was clear and dry. As they approached the intersection of the road with Montgomery Avenue, they saw a man standing in front of the headlights of another automobile signalling to them. The son slackened speed with the intention of drawing up on the other side of the intersection, and when almost at a stop the car collided with a horse which had suddenly emerged from a shadow at the left side of the road. Mrs. Bender was severely injured and the car was damaged as the result of the collision. The animal was a heavy draft horse twenty years old belonging to defendants, and when not working was usually kept in a pasture adjacent to the highway near the scene of the accident. The pasture was enclosed by a fence partly of wire and partly of pickets fastened to horizontal railings, which were notched and nailed to hard pine posts driven into the ground. The horse had for years been in the habit of scratching himself on the pickets, and had once previously been seen loose on the road being chased by defendants' employees. The record does not reveal that on the day in question he had been put into the pasture, but there was testimony by defendants' witness that about fifteen minutes after the accident one of the horizontal bars of the picket fence was found pushed out, and hoof prints were seen on the ground. There was no evidence that the nails were rusty or that the fence was otherwise defective or that it was insufficient for the purpose for which it was intended.

The first question to be decided on the motion for judgment n. o. v. concerns defendants' duty to confine their horse. At common law the owner of domestic animals such as horses and cattle was bound at his peril to keep them off the land of others, and his failure to do so constituted an actionable trespass irrespective of due care on his part (*Forsythe v. Price,* 8 Watts 282; *Dolph v. Ferris,* 7 W. & S. 367), but he was under no legal obligation to restrain them from going upon the highway

unattended, unless he had knowledge of their vicious propensities: *Cox v. Burbidge,* 13 C. B. N. S. 430; *Jones v. Lee,* 106 L. T. N. S. 123; *Heath's Garage, Limited v. Hodges* [1916], 2 K. B. 370; Salmond on Torts (7th ed., London, 1928) §127 (14); Shearman & Redfield on Negligence (New York, 1941) §673. The reason for the rule was that at the time of its origin there was little likelihood of danger from stray domestic animals on the highway. The widespread use of the motor vehicle has changed the situation, however, and the rule adapted to present-day conditions is that stated in the Restatement of Torts, §518 (1): ". . . one who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if, (a) he fails to exercise reasonable care to confine or otherwise control it, and (b) the harm is of a sort which it is normal for animals of its class to do".

In determining whether the instant case comes within the rule of the Restatement, we can safely say without discussion that the second requisite has been satisfied: an unattended horse on the highway at night is in obvious danger of becoming involved in a collision with an automobile which is being carefully driven. The point of contention is in the first requisite. The question is whether plaintiffs have presented sufficient evidence to justify the jury in finding that defendants were negligent, the burden of proof being on plaintiffs. Negligence is not to be presumed from the mere happening of an accident: *Rennie v. Schepps,* 297 Pa. 39, 41. But if the thing which causes the injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of events would not happen if defendant, who has the management, uses proper care, the burden is then placed on defendant, not to explain the accident, but to show that he used due care: *Maltz v. Carter,* 311 Pa. 550; *Knox v. Simmerman,* 301 Pa. 1;

*Folk v. Schaeffer,* 186 Pa. 253; *Devereaux v. Caldin,* 127 Pa. Superior Ct. 595; *Young v. Yellow Cab Co.,* 118 Pa. Superior Ct. 495; *Hamill v. Phila. R. T. Co.,* 98 Pa. Superior Ct. 242; *Latella v. Breyer Co.,* 87 Pa. Superior Ct. 325; *Helfrich v. Gurnari,* 78 Pa. Superior Ct. 449. If he does not show this to the jury's satisfaction, it may infer that he was negligent. Thus, in *Folk v. Schaeffer,* supra, where plaintiff was injured through the slipping of a knot tied by defendant, it was held that the bare fact that the knot slipped permitted the jury to infer want of care by defendant in making it, because ordinarily a knot properly made does not slip. Likewise, horses which are properly confined ordinarily do not escape. Hence the presence of an unattended horse on the highway is sufficient evidence to allow the jury to infer negligence on the part of those whose duty it was to restrain him, and this has been held in a number of cases, including *Tassoni v. LeBoutillier,* 130 Pa. Superior Ct. 303; *Flesch v. Schlue,* 194 Iowa 1200, 191 N. W. 63; *Dickson v. McCoy,* 39 N. Y. 400; *Doherty v. Sweetser,* 82 Hun. 556, 31 N. Y. S. 649; *Kenney v. Antonetti,* 211 Cal. 336, 295 Pac. 341; and *Anderson v. I. M. Jameson Corporation,* 59 P. (2nd) 962. The reason justifying the rule is aptly stated in *Kenney v. Antonetti,* supra (211 Cal. at p. 340, 295 Pac. at p. 342) : "Under any but exceptional circumstances, the exercise of ordinary care will serve to keep unattended animals in their proper inclosures. In these days of rapid automobile transportation, the extreme hazard to drivers and passengers of animals straying unattended on the roads at night cannot be over-estimated. The driver is placed in a well-nigh helpless position because of the tendency of an animal to spring out of the darkness in front of a car when blinded or hypnotized by its headlights. Against this contingency drivers should be protected by having our roads clear of such obstructions and every owner of livestock should make an earnest endeavor to so control their movements with due care that the lives of others may not be thereby endangered."

Defendants, however, argue that they come within our dictum in *Goodman v. Gay,* 15 Pa. 188, to the effect that if a man's horse were to break the stable door and get out without the owner's knowledge or consent, it would be an accident or misadventure, and he would not be liable for any resulting damage. We agree that if those had been the facts in the instant case, defendants would not have been liable. But whether or not he did escape without his owners' knowledge or consent was a matter for the jury's determination and had no bearing on the question of whether plaintiffs made out a prima facie case. The jury was privileged to disbelieve all of defendants' evidence, especially in view of defendants' failure to produce the witness who supposedly placed the horse in the pasture on the day of the accident.

Defendants further argue that the foregoing principles are contrary to our holdings in *Rennie v. Schepps,* supra, and *Potter T. & T. Co. v. Oswald & Hess Co.,* 322 Pa. 81, in both of which we affirmed the granting of a compulsory nonsuit where defendant's steer got loose from a herd being conducted through the city streets and did harm. The steers in those cases, however, were not unattended, but escaped from the active control of their keepers, and this fact was disclosed in the testimony adduced as part of plaintiff's case. The rule stated in *Conley v. Mervis,* 324 Pa. 577, 587, is therefore applicable: "While it is true that where plaintiff's case rests upon a presumption he is entitled to have it submitted to the jury though rebutted by defendant's uncontradicted parol evidence *(Coates v. Commercial Credit Co.* [310 Pa. 330]), where the presumption is rebutted by plaintiff's own evidence, it disappears and a nonsuit will be granted . . ." There being no evidence of lack of care in restraining the steers, the nonsuits were proper. Cf. *Coller v. Knox,* 222 Pa. 362, a similar case. In the present controversy plaintiffs not having rebutted their own prima facie case, they were entitled to have it submitted to the jury. Defendants' motion for judgment n. o. v. was therefore correctly refused.

In support of their motion for a new trial defendants argue that evidence of the hospital bill for treatment for a fall subsequent to the accident was improperly admitted, that the instruction to the jury concerning Mrs. Bender's loss of earning power, later retracted by the court, was prejudicial, and that the verdicts were excessive.

Evidence of subsequent injury is admissible to affect the measure of damages on the original injury only if the subsequent injury was proximately caused by the original negligence. Defendants contend that Mrs. Bender slipped from an independent cause and that therefore the original accident was in no way responsible, citing *Wineberg v. DuBois Boro.*, 209 Pa. 430. In that case plaintiff's second fall "was not caused by the injured leg, but by the slipping of the sound foot" (p. 433). In the instant case plaintiff's subsequent fall was attributable to the failure of the injured limb to function properly, and this was the result of the original injury. The evidence was therefore properly admitted: *Marshall v. Pittsburgh*, 119 Pa. Superior Ct. 189, 197-8; *Gallagher v. Hudson Coal Co.*, 117 Pa. Superior Ct. 480, 483.

After the court had instructed the jury that it might give damages for loss of earning power, defendants' counsel objected on the ground that such loss was not claimed. Counsel for plaintiffs then admitted in the jury's presence that he was making no such claim, and the court instructed the jury to disregard what it had said relating thereto. Under the circumstances we see no prejudice caused to defendants by the mistake.

The verdicts awarded George W. Bender $759.04 for damages to his automobile and $1000 for loss of consortium, and Alice T. Bender $3200 for pain and suffering. Each of plaintiffs filed voluntary remittiturs in the amount of $500. A careful consideration of the record reveals nothing to indicate that the amounts as thus reduced are excessive. They will therefore be permitted to stand.

Judgments affirmed.