Kincher, Appellant, *v.* Huber.

Argued January 15, 1971.  Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

210

*Francis H. S. Ede,* with him *William H. Agnew,* for appellant.

*Jackson M. Sigmon,* for appellee.

*Edward H. McGee,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 28, 1971:

This case arises out of injuries caused by an automobile accident on March 12, 1966. Appellant, Harold Kincher, a passenger in a car driven by Curtis Hughes, one of appellees, was seriously injured when the Hughes car collided with a pickup truck driven by Frank Huber, the other appellee.

Kincher's injuries included a fractured left femur, a broken smaller bone in the left leg, several fractured ribs, a collapsed right lung and various lacerations and contusions. Mr. Kincher spent almost a full year in a hospital, was in traction for three months, in a body cast for two months, and wore a leg brace for six months. Permanent effects of the injuries include a 5/8 inch shortening of the left leg, atrophy of the left thigh, and a fifty degree limitation of motion of the left knee.

Appellant brought suit against both Hughes and Huber, and this action was tried together with an action brought by Hughes, appellant's driver, against Huber. The jury returned a verdict of $50,000 in favor of Kincher against Huber and Hughes, and in the case of Hughes v. Huber, returned a verdict in favor of Huber.

At the time of the accident, Kincher was a senior chief storekeeper with the United States Navy, with some sixteen years of service. Consequently, the Navy paid all of his medical bills. He was also paid his wages during his entire period of convalescence, and he later returned to full duty.

Despite the fact that Kincher made no claim for loss of earning capacity as a result of the accident, the trial court charged the jury at length on that element of damages as well as the method of determining future lost earnings and the reduction of that sum to present worth. At the conclusion of the charge, counsel informed the court that no claim was made for permanent loss of earning power and that life expectancy tables had been introduced only in relation to the possible duration of pain and suffering and the permanent injuries. The court then attempted to correct its mistake as follows:

"First of all, with respect to the most recent subject that I discussed with you, that of damages, I led off into this area dealing with the loss of earning power, and two statements should be made.

"No. 1, with respect to Mr. Kincher, there has been no loss of earning power from the date of the accident up to now, nor is there any loss of earning power claimed by him for the future. No loss of earning power is being claimed or sought by Mr. Kincher for the future.

"The life expectancy table was introduced, therefore, and should be considered by you, utilizing the same factors, in looking at the question as to whether or not he will have any pain and suffering in the future—the fact that he will, of course, carry certain of these scars with him for the balance of his lifetime.

"Again, as I stated to you, there is no claim here and no reasonable basis upon which you could find, in

this case, that Mr. Kincher has suffered a loss of his earning power."

Nevertheless, after the jury's $50,000 verdict was announced, upon motion of appellees, the court en banc granted a new trial, because it believed that the lengthy erroneous charge was not cured by the later correct instruction. In the words of the opinion: "Based upon a reading of the entire charge, it is our conclusion that the court's attempt to restate Kincher's claims for damages was confusing to the jury and ineffective to prevent prejudice to the defendants. This is particularly true in view of the absence of a claim for any medical or other expenses, loss of earnings or loss of future earning power compared with the jury's verdict of Fifty Thousand ($50,000.00) Dollars. While we are reluctant to set aside the jury's verdict and decline to rule now upon whether it was excessive, fundamental fairness requires that a new trial be awarded the defendants."

Kincher now appeals from the order granting the new trial. In considering appeals from the grant or refusal of new trials, we have consistently held that such grants or refusals will not be reversed unless there is a showing of a palpable abuse of discretion or an error of law which controlled the outcome of the case.

Considering the $50,000 verdict, despite the absence of either medical expenses or loss of earning power, and considering the lengthy discussion of computing loss of earning power in the court's original charge, we cannot say that the court abused its discretion in concluding that the jury had probably been confused as to the proper measure of damages. *Bender v. Welsh,* 344 Pa. 392, 25 A. 2d 182 (1942), upon which appellant relies, does not compel a different result.

*Bender* superficially resembles the instant case in that in *Bender,* the trial court charged the jury on loss

of earning power when the plaintiff was making no such claim and then later instructed the jury to disregard its prior charge. However, in that case, the lower court, upon whom the responsibility for awarding a new trial lies, in the absence of an abuse of discretion, did not choose to award one. It reached the same conclusion we reached. Since the plaintiff received a verdict of $3,200 for pain and suffering, of which we remitted $500, the defendant was not prejudiced. This is hardly analogous to the $50,000 verdict in the instant case.

Although the court en banc specifically refuses to find that the $50,000 verdict is excessive, its opinion gives every indication that a belief that it was excessive was at the basis of that ruling. This would not change the result. "The granting of a new trial because of excessiveness is peculiarly within the discretion of the lower court and unless a clear abuse of discretion is present, we will not interfere." *Hall v. George*, 403 Pa. 563, 570, 170 A. 2d 367 (1961).

The court below has granted a new trial generally, although the issue upon which its decision was based related only to damages. In its opinion, it specifically declines to rule on other issues which were offered in support of the new trial. We believe that judicial economy requires that courts consider all issues raised in support of a motion for a new trial when they are raised in order to limit, wherever possible, the issues which must be tried again. Consequently, we shall remand for a determination by the court whether the new trial granted should be confined to the issue of damages or whether the liability question should also be retried. At such time, the court can also consider whether a new trial can be avoided by ordering a remittitur of that part of the $50,000 verdict which it believes was traceable to the erroneous charge. *Skoda*

*v. W. Penn Power Co.,* 411 Pa. 323, 191 A. 2d 822 (1963).

The order of the court below is vacated and the case remanded for further proceedings consistent herewith.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent, for I believe no new trial is necessary in this case, and the court en banc committed an abuse of discretion in so requiring. The trial court's instructions correcting its earlier misapprehension in including a charge on loss or earning capacity were more than sufficient to clarify the elements of damages to the jury.

Furthermore, defendant's counsel took no further specific exception to the court's charge after the clarifying instructions were given, nor did he request additional amplification, preferring instead to rely on a general exception. Hence, the complained of error in this case was nonexistent and could not have been included in any "fundamental error" theory. In my view, when neither party asserts any specific objection to the corrected charge and the court is likewise satisfied that no further instruction to the jury is necessary, to allow the granting of a new trial by the court under such circumstances is not the exercise of justifiable discretion but rather the expression of the court's dissatisfaction with the jury's determination—not based on asserted error of record.

Such action in the absence of trial error not only unjustifiably denies the verdict winner the benefit of the jury's verdict but also unnecessarily burdens both the trial and appellate processes. Judicial resources are not unlimited. The grant of a new trial here involves an unreasonable and unfair allocation of availa-

ble judicial time, and does not advance the quality or efficient administration of justice.

The new trial ordered here gives one litigant two bites of the judicial apple before others have even entered the orchard. I see no reason for thus adding to the distress of those whose relief has already been so long delayed, and I also can discern no reason of policy or law to so exacerbate our backlog.