EDMUND L. WEBBER *vs.* THOMAS E. McDONNELL.

Suffolk.    December 9, 1925. — January 7, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Animal. Horse. Actionable Tort. Words,* "Not clever," "Mean."

An action will not lie against the owner or keeper of a horse for an injury done by it, if it does not appear that the injury resulted from and was a natural consequence of the animal's vicious habits.

Where, at the trial of an action for personal injuries resulting from a kick by an alleged vicious horse of the defendant, the only evidence of knowledge on the part of the defendant of the horse's habits or actions is in substance that the horse kicked the plaintiff as he was going behind him in a stable owned by a third person, that previously, while in the defendant's stable, the horse "did something" that "hurt" an employee of the defendant, who told the defendant that the horse had hurt him, "did something to his arm and bruised him," and that the defendant had said "that the horse 'wasn't clever, or something like that.' That he couldn't get him sold; he didn't stay sold with him and he wasn't going to keep him. That he was mean and he was going to send him back," a verdict should be ordered for the defendant.

TORT for personal injuries resulting from a kick by a horse owned by the defendant. Writ dated January 26, 1921.

In the Superior Court, the action was tried before *Brown*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for him. The motion was denied. There was a verdict for the plaintiff in the sum of $5,000, which, in accordance with an order by the trial judge on a motion by

the defendant for a new trial, was reduced to $3,000. The defendant alleged exceptions.

*E. McAnally,* for the defendant.

*E. H. R. Burroughs,* for the plaintiff.

PIERCE, J. This is an action in tort to recover damages for severe injuries, alleged by the plaintiff to have been inflicted upon him by the kick of a vicious horse, owned by the defendant. At the trial to a jury in the Superior Court, at the close of the evidence the defendant made a motion for a directed verdict, which was refused, and the defendant duly excepted.

In the aspect most favorable to the plaintiff's contention, the evidence warranted a finding that the plaintiff, in the exercise of due care in the stable of one Hurwitz, was kicked in the leg as he walked down an aisle between two rows of stalls by a gray horse, confined in a stall opposite the place where he was when he received the blow. No one saw the horse kick him. The plaintiff was removed to a hospital and was there found to be suffering from a break of both bones in the leg, between the knee and ankle.

There was evidence to warrant a finding that the defendant was the owner of the gray horse and that he had knowledge it had been left at the Hurwitz stable by his servant or agent, at a time shortly before the accident, when the defendant had attempted to deliver it to one Brooks and thereby rescind a sale of it by Brooks to him.

To prove the vicious character of the gray horse, and the defendant's knowledge of it, the plaintiff introduced evidence which warranted a finding that the horse while in the defendant's stable "did something" that "hurt" one Stevens, an employee of the defendant. Stevens being dead at the time of the trial, this evidence came from a witness who testified in substance that Stevens had told him that while he was in the defendant's employ the horse had hurt him; that he "did not remember whether Stevens said the horse 'kicked him or crowded him or what he did do, but he did something to his arm and bruised him.' " The witness further testified that, at a later time in the same day, at a hotel, and in the presence of the defendant, Stevens said that the horse

hurt him and the defendant said he was going to send him back.

The plaintiff introduced evidence that the defendant had said "that the horse 'wasn't clever, or something like that.' That he couldn't get him sold; he didn't stay sold with him and he wasn't going to keep him. That he was mean and he was going to send him back." The horse being a domestic animal, an action will not lie against its owner or keeper for an injury done by it, unless the injury be one which results from and is a natural consequence of the animal's vicious habits. *Goodwin* v. *E. B. Nelson Grocery Co.* 239 Mass. 232. *Osborne* v. *Chocqueel*, 2 Q. B. 109. Nor will an action lie for such harm sustained, unless the owner or keeper knew or should have known of the animal's vicious habits; and knew or should have known from the acts done that it was likely to commit an act of the kind concerning which the action is brought. *Copeland* v. *Draper*, 157 Mass. 558. *Lynch* v. *Richardson*, 163 Mass. 160. *Eastman* v. *Scott*, 182 Mass. 192. *Cox* v. *Burbidge*, 13 C. B. (N. S.) 430. *Creamer* v. *McIlvain*, 89 Md. 343; 45 L. R. A. 531. *Benoit* v. *Troy & Lansingburgh Railroad*, 154 N. Y. 223.

Applying the law to the case at bar, we find no evidence to warrant a finding that the horse had a vicious habit which was shown by other acts of kicking, or that it was generally vicious in a way which should have warned the defendant that it probably would kick some one. To say of a horse that it is not "clever" is to say it has not the intelligence of an ordinary horse. To say it is "mean" does not import that it has the vicious habits of biting or kicking, while it may signify that the horse is obstinate, ill disposed to work or to obey whip or line, a balker, and a quitter. See *Hosmer* v. *Carney*, 228 N. Y. 73. In this case there is no evidence that the word "mean" as applied to horses colloquially signified a kicking horse.

The request should have been granted; the exceptions are sustained, and judgment is to be entered for the defendant under G. L. c. 231, § 122.

*Judgment for the defendant.*