**MERCER v. BYRONS et al.**

No. 4653.

United States Court of Appeals
First Circuit.

Dec. 2, 1952.

Arthur T. Garvey, of Springfield, Mass. (Harold R. Goewey, of Pittsfield, Mass., on brief), for appellant.

Joseph F. Lyons, of Boston, Mass. (Robert J. Donelan, of Great Barrington, Mass., on brief), for appellees.

HARTIGAN, Circuit Judge.

This is an appeal by the defendant from judgments for the plaintiffs entered in the United States District Court for the District of Massachusetts based upon verdicts rendered by a jury in a tort action.

The plaintiffs, Vernon Byrons, his wife Helen and his minor daughter Norean, are citizens of New York and the defendant, Stanley Mercer, is a citizen of Massachusetts. The requisite jurisdictional amount is alleged.

About 9:45 p. m. on July 2, 1951, the plaintiff, Vernon Byrons and his family, consisting of his wife, Helen, their minor daughter, Norean, and his two minor sons (not injured) were driving in the family car in a northerly direction on Route 7, a public highway, in the town of Great Barrington, Massachusetts. About ¼ mile from the Stockbridge town line and at a point approximately opposite pole # 1810 of the Southern Berkshire Power and Electric Company a horse appeared on the highway, having come out of a pasture to the right of the north-bound lane. The horse and the motor vehicle collided. Vernon Byrons' motor vehicle was badly damaged and the horse was killed instantly. The weather was clear and dry. The road is two-lanes of asphalt construction, 18 feet wide, with a 3 foot shoulder of sand on each side.

Vernon Byrons seeks to recover for damages to his motor vehicle and for consequential damages he alleges he sustained as a result of injuries to his wife. Helen and Norean Byrons, p.p.a., seek damages for personal injuries they sustained.

The bill of complaint alleges in substance that the horse that collided with the plaintiff's motor vehicle was (a) under the ownership, management and control of the defendant; (b) the defendant was negligent in permitting said horse to be at large and not properly restrained; and (c) the defendant is liable because he should have known of the horse's dangerous and vicious propensities.

The defendant denies, in his answer, all of these allegations.

At the close of the plaintiffs' case the defendant moved for a directed verdict which the court took under advisement. Thereupon the defendant rested his case and the following day the court denied said motion.

The jury returned a verdict on February 27, 1952, in the sum of $500 for Vernon Byrons; $900 for his wife Helen and $100 for his daughter Norean.

Later on March 5, 1952, the defendant filed a motion to enter judgment for the defendant notwithstanding the jury verdict on the ground that all the evidence is insufficient in law to form a basis for a verdict for the plaintiffs and also a motion to dismiss on the ground that the court lacked jurisdiction because the amount actually in controversy is less than $3,000, exclusive of interest and costs. Both motions were denied by the court on March 18, 1952.

The appellant contends that (1) the court erred in denying the defendant's motion for a directed verdict and in refusing to direct a judgment for the defendant notwithstanding the verdict; (2) the court erred in its instructions to the jury, and (3) the court erred in refusing to dismiss the complaint on the grounds of failure of jurisdiction in that the jury verdict for each plaintiff was less than Three Thousand ($3,000.00) Dollars, exclusive of interest and costs.

There is no merit in the appellant's third contention.

On this question of jurisdiction, the Supreme Court said in St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S.

283, 288, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845:

> " * * * The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. * * *"

See also American R. Co. v. South Porto Rico Sugar Co., 1 Cir., 1923, 293 F. 670; Gray v. Blight, 10 Cir., 1940, 112 F.2d 696; Jones v. Drewry's, Limited, U.S.A., 7 Cir., 1945, 149 F.2d 250. There is nothing in the record that indicates the claims here were not made in good faith.

 We find similar difficulty in agreeing with appellant's first contention. The meager designated contents of record on appeal disclose sufficient evidence to submit plaintiffs' case to the jury on the issue of defendant's negligence and the trial court was not in error in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

Although the defendant, in his answer, denied ownership or control of the horse involved in the collision, he admitted that the horse was the property of his two minor sons. Furthermore, the defendant admitted that on the night of the accident, "said horse had been placed in a closed box stall in the barn on defendant's premises and if he was at large on or near the highway later, he had escaped from said box stall and said barn." This admission by the defendant seems inconsistent with his assertion that the horse was not under his control and it raises the issue of whether or not defendant was negligent in the circumstances here.

In this case, the unexplained appearance of a horse which admittedly was owned by the defendant's minor sons and had been quartered in the barn on defendant's premises, galloping on a heavily traveled public highway in the night seems to us to be a sufficient basis for a fair inference of negligence within the scope of the rule of res ipsa loquitur. See Bender v. Welsh, 1942, 344 Pa. 392, 25 A.2d 182.

This rule was explained in Sweeney v. Erving, 1913, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, and reaffirmed in Jesionowski v. Boston & Maine R. Co., 1946, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416. Recently the Supreme Court in Johnson v. United States, 1947, 333 U.S. 46, 49, 50, 68 S.Ct. 391, 393, 92 L.Ed. 468. Motion to recall mandate denied, 333 U.S. 865, 68 S.Ct. 788, 92 L.Ed. 1143, said: "No act need be explicable only in terms of negligence in order for the rule of *res ipsa loquitur* to be invoked. The rule deals only with permissible inferences from unexplained events. * * * The inquiry, however, is not as to possible causes of the accident but whether a showing that petitioner was without fault and was injured by the dropping of the block is the basis of a fair inference that the man who dropped the block was negligent. We think it is, for human experience tells us that careful men do not customarily do such an act." See also United States v. Hull, 1 Cir., 1952, 195 F.2d 64.

Massachusetts has used practically the same language. In Roscigno v. Colonial Beacon Oil Co., 1936, 294 Mass. 234, at page 235, 200 N.E. 883, the Supreme Judicial Court of Massachusetts said: "The rule of res ipsa loquitur merely permits the tribunal of fact, if it sees fit, in the absence of a finding of the specific cause of the occurrence * * * to infer from the occurrence itself that it would not have happened unless in some respect the defendant had been negligent * * * the tribunal of fact must be able to find, either by expert evidence * * * or by its own common knowledge * * * that the mere occurrence of the accident shows negligence as a cause."

The defendant admitted that this horse was owned by his two minor sons and that it was quartered in his barn on the night of the accident. There was evidence that de-

fendant had told the police officer who investigated the accident that he would bury the horse; that on the afternoon following the accident, this police officer had observed a bull dozer digging a hole in defendant's field. We believe that there was a sufficient showing to submit to the jury the question of whether or not the horse was under defendant's control at the time of the accident.

However, it is not clear that the jury found that the defendant was negligent, and this brings us to the appellant's second ground for reversal, namely, that the trial judge committed erroneous and prejudicial error in his instructions to the jury. We agree with this contention.

This case was submitted to the jury not only on the theory that the defendant may have been negligent but also on the theory that the defendant may be liable regardless of fault, because he should have known that the horse was in the habit of bolting the pasture onto the highway. The portion of the charge material to this latter theory was as follows:

"Now the law also says that the possessor of domestic animals which he has reason to know have dangerous propensities abnormal to its class is subject to liability for harm caused thereby to others, except trespassers on the land, although he has exercised utmost care to prevent it from doing harm. If you have a vicious dog, knowing he is vicious, even though you

are not negligent, even though he gets off your property and molests somebody, you are liable. No negligence there. It just naturally flows back from the fact that he is a vicious animal or an animal with vicious propensities. But if you find from the evidence here that there was no such situation as I have spoken of now of an animal with vicious propensities, then you would pass to the question of the negligence angle * * *."

The abstract proposition of law thus embodied in the charge is in accord with the law as laid down in Am.L.Inst., Restatement of Torts § 509. But we think it was error to submit this question to the jury, because the evidence afforded no reasonable support for a plaintiff's verdict on a theory of liability without fault. First of all, no identity was established between the horses which strayed on the land of the defendant's neighbor, Arthur Andrew,[1] and the one which collided with the plaintiff's car. See Webber v. McDonnell, 1926, 254 Mass. 387, 150 N.E. 189. And even if such identity were established, the infrequency of the occurrence (five or six times in three years) so detracts from the weight of the evidence that it may be said as a matter of law that the jury did not have a sufficient basis to consider the question. Cf. Scanlon v. Cavanaugh, 1911, 210 Mass. 291, 96 N.E. 526. Furthermore, even if it be assumed that the defendant knew or had reason to know that the particular horse, when un-

1. Arthur Andrew testified:

"Q. How many times would you say in the course of a year you would have occasion to notice the presence of these horses on your land? A. Not more than once or twice.

"Q. Once or twice a year. Over how many years would you say that condition has existed? A. I don't know. There have been many horses besides them there. I should say over the past three years.

* * * * *

"X–Q. You don't know who owns any of the livestock, cows, or horses? A. No; but I assume he does.

"X–Q. No, you don't know yourself? A. They never showed me a bill of sale.

"X–Q. You had no occasion to inquire? A. No.

"X–Q. You say after you tore this fence down on your property that some horses did go over there? A. That's right. The other fellow across the street came down too.

"X–Q. He came down too? A. Occasionally.

"X–Q. You were not present on the day of the accident were you? A. No, sir.

"X–Q. Were you away? A. Yes, sir.

"X–Q. Where were you? A. In Concord, New Hampshire. I was bringing some dogs back.

"X–Q. You were away that day? A. I was.

"X–Q. You got home on the 3rd? A. The next day.

"Mr. Garvey: That is all. * * *"

288

restrained, had a tendency to stray from defendant's land across the adjacent highway to an unenclosed pasture beyond, still it could not be said that the horse had "dangerous propensities abnormal to its class" within the meaning of the rule subjecting the possessor of such a domestic animal to liability for harm caused by the animal, although he has exercised the utmost care to prevent it from doing harm.

In the absence of any evidence to support a recovery based upon a theory of liability without fault, the case rests solely on the alleged negligence of defendant in allowing the horse to escape from the pasture. Since the jury was allowed to consider its verdict under alternative theories, we are unable to determine whether they found the defendant negligent, which would have been proper, or whether they found that the horse had a vicious propensity rendering defendant liable without negligence, which would have been erroneous.

Therefore, since the verdict may have been based on a question of fact which had not been established by a fair preponderance of the evidence, we have no alternative but to remand this case to the district court for a new trial.

The judgments of the district court are vacated and the case is remanded to that court for a new trial; the appellant recovers costs on appeal.

Clark, Circuit Judge, dissented.