Vaughn *v.* Philadelphia Transportation
Company, Appellant.

Argued November 18, 1964. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, O'Brien and Roberts,
JJ.

rear-
gument refused May 3, 1965.

*Walter E. Knecht, Jr.,* for appellant.

*Robert Schaffer,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 22, 1965:

Sylvia Vaughn was a passenger in an automobile operated by her husband, Clarence Vaughn, when it ran into the rear end of a street car. Personal injuries resulted. This action for damages followed wherein the Philadelphia Transportation Company was named defendant. Clarence Vaughn was then brought on the record as an additional defendant. After trial, the jury returned a verdict in favor of the wife-plaintiff in the sum of $20,000 against both defendants jointly. Post trial motions filed on behalf of the original defendant were dismissed. From the judgment entered on the verdict, the original defendant appeals.

The street car involved had two yellow lights on the rear thereof with the word "s-t-o-p" printed on each light. If functioning properly, these lights would go on automatically when the brakes of the street car were applied. Two additional red lights were also located on the rear of the street car.

The plaintiffs' evidence established that, as the street car approached the intersection where the collision occurred, it was traveling at a rate of speed approximating 25 to 30 miles per hour; that the Vaughn automobile, traveling in the same direction at about the same speed, was approximately 30 feet to the rear; that the street car, suddenly and without warning, came to a stop when the intersection light changed from green to cautionary yellow; that the stop-warning signal-lights on the rear of the street car failed to function or to illuminate; and, that the Vaughn automobile ran into the rear of the street car.

In answer to the above, the traction company offered evidence to prove that the street car came to a gradual and slow stop at the intersection; that it had been stopped for about 15 seconds before the Vaughn automobile struck it in the rear and pushed it forward fifteen feet; that the stop-warning signal-lights were functioning properly, and were still on immediately after the accident, and also were functioning properly when the street car had previously left the barn.

On this record, the question of the traction company's negligence was strictly a jury question, although error in the charge of the trial court requires the grant of a new trial.

Plaintiffs contended at trial that the operator of the street car was negligent in not giving a hand or mechanical signal of the intention to stop, as required by the provisions of Article X, §1012 of The Vehicle Code, Act of May 1, 1929, P. L. 905, as amended, 75 P.S. §1012. In line with this position, the trial court charged the jury, inter alia, as follows: "Now, the duty which the law imposes upon the defendant, PTC, is as follows. Our Vehicle Code provides that the driver of any vehicle upon the highway, before starting, stopping and turning shall first see that such movement can be made in safety. That is, members of the jury, our Vehicle Code provides for the giving of a hand or a mechanical signal of an intention to start, stop or turn from a direct line of travel. This section of our Code requires that such signal be plainly visible to an approaching or following vehicle whenever the operation of such vehicle may be affected by such stopping, starting or turning."

The relevant section of The Vehicle Code, supra, requiring a signal to be given of an intention to stop, etc., applies to "vehicles", but the code is clear that "vehicles" does not include street cars operating on rails.

Originally, Article I, §102 of the Act of 1929, supra, 75 P.S. §102, defined the term "vehicle" to mean "every device in, upon or by which any person or property is or may be transported . . . upon a public highway, excepting . . . devices . . . used exclusively upon stationary rails or tracks . . . ." In *Feldman v. Philadelphia R. T. Co.*, 106 Pa. Superior Ct. 494, 163 A. 39 (1932), the Superior Court ruled that §1013(a) of the Act of 1929, supra, 75 P.S. §1013(a) (formerly 75 P.S. §572), dealing with the right-of-way where two "vehicles" approach an intersection at the same time, did not apply to street cars. Thereafter, the legislature amended said §1013 by the Act of June 29, 1937, P. L. 2329, to read "when two (2) vehicles, *or two (2) streetcars,* or two (2) trackless trolley omnibuses approach or enter . . . an intersection . . . ." (Emphasis supplied). That the legislature deemed it necessary to add the term "streetcars" when it had already included "vehicles" is persuasive that the former is not included in the latter generally. Furthermore, at the same time, the Proviso to §102 of the Act of May 1, 1929, supra, defining "vehicles" was amended to read, "That, for the purpose of Article X of this act, . . . any other device moving upon wheels on a public highway, *except a device moving upon wheels upon stationary rails or tracks on a public highway,* shall be deemed a vehicle." (Emphasis supplied). Act of June 29, 1937, supra. Thus we see that the legislature fully intended that street cars were not to be regulated under the general provisions of Article X. They are only regulated by those sections (See, e.g., 75 P.S. §1013, supra), which include them specifically. Cf. *Dopler v. Pittsburgh Rys. Co.*, 307 Pa. 113, 160 A. 592 (1932), and *Feldman v. Philadelphia R. T. Co.*, supra. Neither do we subscribe to the position that there is a common law duty requiring a street car to be equipped with a mechanical stop-light device.

It is argued that, even if the court erred in that portion of the charge just discussed, it was harmless when the instructions are read and considered as a whole. So reading the charge, we find that in no other instance therein did the court specifically define the duty of the traction company. It is fundamental that the primary duty of a trial judge is clearly and correctly to define the issues to be resolved by the jury: *Smith v. Clark*, 411 Pa. 142, 190 A. 2d 441 (1963). How could the jury possibly understand the issues to be determined, when the duty of the defendant involved was defined only in an incorrect manner?

Further, under the charge of the court, the jury could find that, even if the street car came to a slow and gradual stop at the intersection, the traction company was still negligent because it violated its *statutory* duty in not having its mechanical stop-warning signal-lights functioning, and in failing to give such a signal of its intention to stop. What the jury found is, of course, problematical. In determining whether fundamentally erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the complained of verdict is not the question. If it appears that such instructions might have been responsible for the verdict, a new trial is mandatory: *Riesberg v. Pittsburgh & Lake Erie R. R.*, 407 Pa. 434, 180 A. 2d 575 (1962).

It is also argued that, regardless of the lack of any common law or statutory duty to give a warning of an intended stop through a mechanical signal, the traction company gratuitously assumed and undertook to furnish the members of the public with such a signal, and, having failed to fulfill this obligation on the present occasion, was guilty of negligence. This contention may have merit. However, the case was not tried on this theory, and the court failed to give any instructions in this regard. Such a responsibility, gra-

tuitously undertaken, would entail substantially different obligations than those included in a duty imposed by statute. Further, there was no evidence offered to establish that the alleged failure of the stop-lights to function was due to the negligence of the traction company.

Finally, it is urged that because the traction company-defendant recorded only a general exception to the charge, that it now cannot complain of the error asserted. The error involved was basic and fundamental; therefore, a general exception was sufficient. *Smith v. Clark*, supra, and *Sweeny v. Bonafiglia*, 403 Pa. 217, 169 A. 2d 292 (1961).

Judgment reversed, and new trial ordered.

---

. DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

When an injustice has been done, when the law has been clearly violated, when a litigant has been denied a fair trial, there must be a new trial regardless of backlog, toplog or sidelogs of pending cases in the courts. When, however, an issue has been fairly presented to a fact-finding tribunal and a verdict has been returned which does not shock the conscience of the Court or offend against our fundamental concept of fair play, it seems to me to be an unnecessary piling up of the backlog of untried cases (a backlog which has fired with indignation all champions of justice and orderly administration of the courts), to order a new trial with all its attendant expense, expenditure of time and inevitable delays.

The mandating of a new trial in this case, as I view it, is a wholly unnecessary, vain and useless thing which will not advance the cause of justice. The trial judge inadvertently used the term "Vehicle Code" in outlining the duty of street car motormen, but this slip of the tongue in no way affected the orderliness of the trial, nor was anyone deceived by the trifling mistake.

That this is true is evidenced by the fact that the attorney of the defendant railway company did not notice the linguistic triviality and took no formal or informal exception to it.

In his charge the trial judge said: "Our Vehicle Code provides for the giving of a hand or a mechanical signal of an intention to start, stop or turn from a direct line of travel."

It is true, of course, that The Vehicle Code of 1929, as amended by the Act of 1937, is directed primarily to the regulation and control of motor vehicles, but it is evident also that in some of its features street cars are encompassed in the general language employed. For instance, §1012(a) states: "The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, . . . whenever the operation of *any other vehicle . . . may be affected* by such movement, shall give a signal, as required in this section, *plainly visible to the driver of such other vehicle of the intention to make such movement.*" (Emphasis supplied.)

Under the interpretation indicated by the majority opinion the driver of an automobile could legally make a left turn in the front of a street car without signalling. Similarly, it could be argued that if an automobile stopped suddenly without warning before a street car thus causing a collision, the driver of the motor car would be absolved from blame because a trolley car cannot be regarded as a vehicle which "may be affected."

Section 1013(b) states: "(b) The driver of a vehicle, street car, or trackless trolley omnibus, intending to turn to the left within an intersection, shall yield the right of way to *any vehicle,* approaching from the opposite direction, which is within the intersection . . ." (Emphasis supplied.)

The majority presumably would interpret this section to say that the driver of an automobile turning to the left would not be required to yield the right of way to a street car in the intersection, a palpably unacceptable interpretation. In *Steffenson v. Lehigh Val. Transit Co.*, 361 Pa. 317, 320, the defendant argued that the "assured clear distance" rule pronounced in Article X of The Vehicle Code, would not apply to trolley cars. This Court dismissed the contention with the statement: "This argument lacks merit." Section 1002 of The Vehicle Code provides speed limits for vehicles passing school buildings "during recess." It would be absurd to say that automobiles must abide by this restriction but that street cars may, with impunity, speed by school buildings and children at 60 miles per hour.

Where common sense reads into The Vehicle Code a street car as well as an automobile, the law will assume that street cars are included within the scope of that provision of the code. The judge erred in giving The Vehicle Code as the authority for the particular instructions he imparted to the jury, but, announcing a wrong source for a correct instruction, does not vitiate the effectiveness of the correct law which is expounded. If the judge had attributed what he said to the Justinian Code or the Napoleonic Code, his instruction would still be correct. Although he mentioned the phrase "Vehicle Code" twice and "Code" once, he did not make a violation of the Code an indispensable factor in the ascribing of negligence to the street car operator. Following his brief reference to the Code he said: "It must also be noted that the mere happening of a rear-end collision does not constitute negligence as a matter of law on the part of either driver. The occurrence of such a collision does not raise a presumption that the driver of either vehicle was negligent. *The*

*plaintiffs must prove that the collision resulted from the negligence of the defendant, PTC."*

The evidence showed that the street car involved, which was traveling southwardly on Torresdale Avenue in Philadelphia, slowed down as it approached the intersecting Church Street, as if to stop, and then increased its speed as if it intended to proceed through the intersection without stopping. The traffic light showed green. Then, suddenly, the street car, without warning, came to an abrupt stop. The signalling lights at the rear of the car, which are to illuminate the word STOP, did not flash on. The automobile in which the plaintiff Mrs. Vaughn was riding and which had been following the car, at an intervening distance of some 30 feet, crashed into the rear of the car and Mrs. Vaughn was thrown into the windshield.

The jury could find, entirely apart from any provision of The Vehicle Code, that the operator of the street car was negligent in the manner he stopped his car or that the signalling device, through negligence of the street car company, was not in proper working order.

The driver of an automobile is required to put out his hand when he intends to stop or turn because this, in the absence of a mechanical device, is a suitable way of informing trailing vehicles of his intention to do something which may endanger those in the rear. This is a sound doctrine and cannot be disputed by anyone. It would be absurd, then, to say that because a street car is a longer vehicle, a heavier vehicle, and therefore a more dangerous vehicle, the duty here to warn riding and walking persons disappears. In *Rothkugel v. P. R. T. Co.,* 92 Pa. Superior Ct. 105, the plaintiff was struck when the rear end of a car, in making a turn, struck him as he stood on the sidewalk. The Court found the street car motorman negligent for not sounding a warning before making the turn.

A street car is an instrumentality capable of wreaking tremendous damage. Its heavy, cumbersome trucks, gigantic wheels and massive swaying superstructure require that the operator exercise ceaseless vigilance and that the enormous complicated machinery be in excellent working condition at all times, if the public is to be protected. It requires no citation of authority to establish that the operator of such, a gargantuan engine, about to perform a maneuver which can imperil people on the street, afoot or aboard another vehicle, must sound or announce a warning before that maneuver is begun. What is negligence but the failure of a reasonable person, equipped with intelligence and a concern for the rights of others, to do what is required to avoid injurying others?

In *Nees v. Minneapolis St. Railway*, 16 N.W. 2d 758, the Court said: "That defendant's vehicle was a street car instead of a motor vehicle, as in the above cited cases (involving rear end collisions) would not absolve the motorman from the common law duty to exercise due care with respect to other traffic."

The majority opinion states that there is no common law duty "requiring a street car to be equipped with a mechanical stop-light device." This would suggest that street cars may charge over our streets with the primitive freedom of bisons thundering across the prairies. Nothing could be more contrary to fundamental common law principles. There was a time when street cars were manned by a motorman and a conductor, the latter supervising the rear platform of the car and acquainting the motorman, through shouting or by bell signals, of imminent dangers within his area of supervision. If the conductor failed in his duty he was guilty of negligence which was imputable to his employer.

With the vanishing, like the bison, of the street car conductor, the duty of supervision of the rear end of

the car did not also vanish. The management of street car companies, recognizing their responsibility to protect from harm persons in the wake of the car, as well as those on the track in front of the car, installed a useful mechanical system whereby the motorman could supervise the stern end of the car by lighting up a red sign STOP, as he threw on his brakes to retard the foreward movement of his car. Installing such a device shows a high regard for safety but failing to keep that device in working order shows a complete disregard for safety. There was evidence that the STOP lights on the car in this case failed to go on when the motorman impulsively threw on his brakes, throwing everyone behind him forward to a potential harm.

The jury could have found that the defendant company was negligent in not having properly maintained the signal system or that the motorman was negligent in precipitately stopping the car after having indicated that he was proceeding through the intersection. In any event, the jury was properly instructed, despite the inadvertent naming of The Vehicle Code, and the record amply warrants their verdict of negligence against the street car company.

It is particularly to be noted that the jury did not place the entire blame on the street car company. It said by its verdict that the driver of the Vaughn automobile was also negligent. The verdict, therefore, obviously was based on common sense applied to a very simple set of facts. To order a new trial, in the face of so obviously patent a sensible verdict, because the judge pronounced something Tweedledee instead of Tweedledum, is to play ducks and drakes with the administration of justice.

The supererogatory ordering of a new trial in this case will not of itself perceptibly add to the huge backlog of untried cases in the court. However, the slightness of the reasoning for the ordering of the new trial,

if persisted in, will eventually produce that one log which will break the back of the camel of strenuous and heroic effort being made throughout the Commonwealth to bring trial calendars up to a reasonable state of currency.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

In view of the reasonable expectations and customary conduct of the traffic world, it is anomalous to fail to recognize that, if the alleged facts are found, the defendant had, as a matter of law, a duty under the *common law* of negligence to signal to plaintiff that it was coming to a stop. In this respect, the standard of conduct required of defendant was not a question for the jury. It was a question of law. Thus, while the trial court may have erred in deriving the duty from The Vehicle Code the error was harmless.

Accordingly, I would affirm.