517 P.2d 73

Juliana CARRILLO et al., Plaintiffs-Appellants,

v.

Leon HOYL and Tommy Schnaubert, Defendants-Appellees.

No. 1216.

Court of Appeals of New Mexico.

Nov. 28, 1973.

William J. Heck, Hobbs, for plaintiffs-appellants.

Sam Laughlin, Jr., Girand & Richards, P.A., Hobbs, for defendants-appellees.

## OPINION

LOPEZ, Judge.

A pickup truck collided with Hoyl's mare which had escaped from Schnaubert's corral. Plaintiffs are respectively the passenger, driver and owner of the pickup. Plaintiffs sued defendants for negligence. Defendants' motions for summary judgment were granted. Plaintiffs appeal only from the summary judgment in favor of Schnaubert, claiming the Schnaubert summary judgment was improper because of the doctrine of res ipsa loquitur.

We first consider whether Schnaubert made a prima facie showing entitling him to summary judgment. Tapia v. McKenzie, 83 N.M. 116, 489 P.2d 181 (Ct. App.1971), hereinafter referred to as *Tapia I*. As to how the mare escaped, the facts as developed in the deposition of defendant Schnaubert are as follows: Defendant Hoyl owned two horses which were in need of medical attention. Schnaubert gratuitously allowed their owner to keep them in his corral while they were being attended to. Hoyl left Schnaubert in charge of the horses while he was visiting relatives in Texas. Schnaubert fed the horses the evening before the accident and had closed and locked the gate. After hearing of the accident, Schnaubert went out to the corral and learned that the horses had escaped but that the gate was still locked. The only persons in possession of keys which could have unlocked the gate were the two defendants.

Both horses, the mare involved in the wreck and a filly, escaped from the corral. Schnaubert concluded they jumped over a gate. This conclusion was based on the following facts: (a) there was a "rainbow" or bent place in the top of the gate; (b) tracks " . . . on the other side of the gate looked like to me where they had hit . . ."; (c) " . . . hair . . . on the post next to where you latch the gate . . ."; (d) the gate 52 or 53 inches high, was the lowest part of the corral; and (e) no evidence that the horses got out at any other place.

■ Since there were no opposing affidavits or depositions which controverted any of the above facts, they must be taken as true. Martin v. Board of Education of City of Albuquerque, 79 N.M. 636, 447 P. 2d 516 (1968). These facts are at least prima facie evidence that the horses escaped from the corral by jumping the gate. The trial expressly found that, " . . . The horse got out of the corral by jumping over the gate."

In *Tapia I* we said:

" . . . These facts, [the showing of means of escape] however, do not make a prima facie showing of *no negligence* (see N.M.U.J.I. 12.1) on the part of defendant because they show nothing as to action, inaction or foreseeability on the part of defendant in connection with the means of escape. . . ." [Emphasis added]

The trial court found as follows:

"(c) Before and after the horse escaped, both the gate and the fence were of the material, construction and height that is recognized by people with experience in such matters as being adequate to safely confine horses of this type.

"(d) There was adequate room for the two horses in the corral.

"(e) The horses were regularly and well fed and watered.

"(f) The owner of the horse had raised it from birth and had never known it to jump any fence or gate including pasture fences that were not as high as the one in question.

"(g) The defendant had kept several different horses in this corral, some for long periods, and none had ever jumped the fence or gate.

"(h) The horse in question had been in the corral three or four weeks and

had never showed any inclination to being wild or to try to jump the fence or gate, and the defendant had no knowledge or reason to foresee that the horse might jump this gate or fence."

We have reviewed the record; the trial court's findings are based on uncontroverted deposition testimony.

 We hold that Schnaubert made a prima facie showing as to the means of escape and the absence of negligence on his part which supports the summary judgment. At this point it became plaintiffs' burden to show that a factual issue existed. In *Tapia I* we described this burden as follows:

"  . . . Plaintiff could  . . . [meet his burden] by showing there are facts tending to establish the elements of res ipsa loquitur. If there is no showing that a factual issue exists as to the elements of the doctrine, the doctrine would not be available to defeat the summary judgment. . . ."

In holding that the doctrine of res ipsa loquitur could be applicable to a car-livestock collision, the court in Mitchell v. Ridgway, 77 N.M. 249, 421 P.2d 778 (1966), stated:

"  . . . The plaintiff must still fulfill the burden of satisfying the court, or the jury, that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, and that the agency or instrumentality, in this case a domestic animal, was within the exclusive control of the defendant. . . ."

The plaintiffs herein have made no attempt to show, by affidavit or deposition, that this is the type of accident which does not occur in the absence of negligence. Plaintiffs' only evidence is that the pickup collided with the horse. All other evidence is to the effect that livestock sometime act unexpectedly. Cf. Akin v. Berkshire, 85 N.M. 425, 512 P.2d 1261 (Ct.App.1973). Since the only showing is the occurrence of an accident, the doctrine of *res ipsa loquitur* cannot apply. Renfro v. J. D. Cog-

gins Company, 71 N.M. 310, 378 P.2d 130 (1963); Tapia v. McKenzie, 85 N.M. 567, 514 P.2d 618 (Ct.App.1973) (*Tapia II*).

There being no genuine, material issue of fact, and defendant being entitled to judgment as a matter of law, the judgment of the trial court is affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.