631 P.2d 1314

**Geraldine MARTINEZ, Plaintiff-Appellee,**

**v.**

**Thomas TEAGUE, Defendant-Appellant.**

**No. 4750.**

Court of Appeals of New Mexico.

April 2, 1981.

448

John B. Pound, Montgomery & Andrews, P. A., Joseph A. Sommer, Sommer, Lawler & Scheuer, P. A., Santa Fe, for defendant-appellant.

Robert R. Rothstein, Jan Unna, Rothstein, Bailey & Unna, Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

On May 16, 1978, when driving her automobile on State Highway 84 shortly after midnight near Medenales, Mrs. Martinez collided with a horse owned by Mr. Teague and suffered injuries. The defendant, Mr. Teague, has horses on his land along this highway. A jury found the defendant's negligence caused Mrs. Martinez' injuries and awarded her $250,000.00 in damages. Mr. Teague appeals on five grounds: 1. that the court should have declared a mistrial when the plaintiff informed the jury that the defendant had insurance; 2. that the jury should not have been instructed on *res ipsa loquitur*; 3. that the jury should not have been instructed that violation of certain statutes was negligence *per se*; 4. that the jury award was excessive; and 5. that the cumulative errors committed deprived the defendant of a fair trial. Finding no error, we affirm the judgment of the trial court.

*Mention of insurance.* A blanket rule against the inclusion of evidence that a

party is insured does not exist in New Mexico. Evidence that a person is insured is not admissible to show that he acted negligently or wrongfully. N.M.R. Evid. 411, N.M.S.A. 1978. In certain other circumstances, however, it is admissible, as when used to show proof of agency, ownership, or control. *Id.* In extreme circumstances, the exclusion of evidence of insurance is reversible error. *See, Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 589 P.2d 1037 (1979). The propriety of admitting the evidence depends on the reason it was·proffered. In *Grammer v. Kohlhaas Tank & Equipment Co.,* 93 N.M. 685, 692, 604 P.2d 823, 830 (Ct.App. 1979), *cert. ·denied,* 94 N.M. 628, 614 P.2d 545 (1980), this court set out the following rules for determining the admissibility of evidence of insurance coverage:

(1) Evidence that a person was or was not insured against liability is *not* admissible upon the issue whether he acted negligently or otherwise wrongfully.

(2) Evidence that a person was or was not insured against liability *is* admissible when offered for any other purpose which is relevant and basic to a fair trial.

(3) The trial court may, in its discretion, admit evidence of insurance coverage if it believes that its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Contrariwise, in its discretion, the trial court may exclude evidence of insurance coverage.

(4) The trial court's ruling can only be held to be reversible error in the event of an abuse of that discretion.

■■■ The evidence that Mr. Teague was protected by insurance was mentioned by plaintiff's counsel when he read a portion of Dr. Wood's report to Dr. Egelman. The portion read contained Dr. Wood's observation that Mrs. Martinez did not trust her attorney because she thought he was siding with the insurance company. The portion was read aloud, not to show that the insured, Mr. Teague, acted wrongfully, but to show why Mrs. Martinez was increasing her demands for compensation. The explanation of why Mrs. Martinez was increasing her demands was relevant to discredit Dr. Egelman's earlier opinion that Mrs. Martinez was trying to solve her financial problems through lawsuits. This evidence is not barred by Rule 411, the first rule in *Grammer,* and is admissible under the second rule enumerated in that case. Evidence of insurance, not used to show the wrongful acts of the insured, is admissible to rebut the discrediting effect and correct any wrong impression of earlier testimony by the witness. *See, Wood v. Dwyer,* 85 N.M. 687, 515 P.2d 1291 (Ct.App.1973). This was the legitimate purpose for which the testimony was elicited and admitted in the case before us. The evidence was also admissible under the third rule in *Grammer.* It was introduced in the context of workmen's compensation, and, although Dr. Egelman subsequently clarified the testimony slightly by explaining that Mrs. Martinez was involved in two cases simultaneously—one for workmen's compensation benefits and the present negligence suit—the court could have found the prejudicial effect very minimal. The jury could have missed the reference altogether, or it could have thought the insurance was workmen's compensation insurance. There is no abuse of discretion under the third rule in *Grammer,* and no reversible error under the fourth rule.

■■■ *Res ipsa loquitur.* Mere proof of an accident is insufficient to invoke the doctrine of *res ipsa loquitur. Tapia v. McKenzie,* 85 N.M. 567, 514 P.2d 618 (Ct. App.1973). In order for the doctrine to be applicable, the following must be true:

(1) [T]he accident [must] be of the kind which ordinarily does not occur in the absence of someone's negligence.

(2) [The accident] must be caused by an agency or instrumentality within the exclusive control and management of the defendant.

*Renfro v. J. D. Coggins Co.,* 71 N.M. 310, 316, 378 P.2d 130, 134 (1963).

The defendant does not dispute that the second test was met. The horse, which was the cause of the accident, was within the defendant's exclusive control and management. He does challenge the applicability of the first test, claiming that *Akin v. Berkshire*, 85 N.M. 425, 512 P.2d 1261 (Ct. App.1973) controls in the circumstances of this case. In *Akin*, a cow on the road caused an automobile accident. In suing the owner of the cow, the plaintiff relied on *res ipsa loquitur*. This court said that *res ipsa* did not apply because the plaintiff failed to prove that the accident was of the kind which ordinarily does not occur in the absence of someone's negligence; *see also*, *Tapia*, a similar case. *Akin* and *Tapia* do not stand for the proposition that in cases involving a collision with livestock on the road, *res ipsa* is never applicable. In *Mitchell v. Ridgway*, 77 N.M. 249, 421 P.2d 778 (1966), the Supreme Court, finding that a count of the complaint invoking *res ipsa* stated a cause of action in a negligence suit arising out of a collision with a horse on the road, reversed the trial court's dismissal. *Akin*, *Tapia* and *Mitchell* read together indicate that each case must be decided by considering its own unique facts.

For *res ipsa* to apply, there must be facts which lead to a reasonable and logical inference that the defendant was negligent. *Strong v. Shaw*, 96 N.M. 281, 629 P.2d 784 (1980). The State Policeman who investigated the accident testified that the road where the accident occurred is lined by fences put up by the highway department. The gate to the defendant's property was open, and there was no cattle guard at the gate. Defendant said he always left the gate open for easy access. Other witnesses testified that defendant's corral, from which the horses somehow escaped, was about three and a half feet high. The defendant stated that he knew a horse could jump a three and a half foot fence. When the corral was examined after the accident, it was found to be closed and locked. There was no evidence that anyone had let the horses out; no one had been heard near the house, nor were there any tracks to indicate the presence of strangers.

This case is distinguishable from both *Akin* and *Tapia*. In those cases, there was no evidence of negligence in the construction or maintenance of the gates and fences. In *Akin*, there was also no evidence of how the cow escaped onto the road. In *Tapia*, there was some evidence that the cow walked across a cattle guard. Thus it was unfair to infer the defendant's negligence from the lack of evidence in *Akin*; and in *Tapia*, a reasonable inference was that the defendant was *not* negligent. The logical inference in the instant case, on the contrary, is that the horse escaped through the owner's negligence. Since the facts indicate that Mr. Teague was negligent in the construction of his corral and in his use of the gate, and that this negligence was the cause of the accident, the trial court did not err in instructing the jury on the doctrine of *res ipsa loquitur.*

*Negligence per se.* We do not reach this issue, because Mr. Teague failed to preserve it for appeal. The specific vice in a challenged instruction must be pointed out to the trial court in order to preserve the error for review. *Gonzales v. Allison & Haney, Inc.*, 71 N.M. 478, 379 P.2d 772 (1963); *McBee v. Atchison, T. & S. F. Ry.*, 80 N.M. 468, 457 P.2d 987 (Ct.App.1969). Unless the objection raised at trial to an instruction is the same as that raised in the brief on appeal, this court will not consider the objection. *Harrell v. City of Belen*, 93 N.M. 612, 603 P.2d 722 (Ct.App.), *rev'd on other grounds*, 93 N.M. 601, 603 P.2d 711 (1979). The defendant argued to the trial judge that the instruction on negligence *per se* was repetitious, and that there was no evidence to support part of the instruction. That part was then deleted. No argument was made at that time that the statutes cited do not give a standard for determining negligence and so cannot be used in an instruction on negligence *per se*. We will not now consider this argument.

■ Defendant contends that, as the error was fundamental error, we should review it even if he failed to make the proper objection below. In support of this, he cites *Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 209 A.2d 279 (1965). While *Vaughn* indicates that fundamental error may be found in the instructions given in a civil negligence case, this rule has not been adopted in New Mexico, and we decline to adopt it in this case.

*Excessive award.* The defendant gives a three pronged argument as to why the award of damages was excessive. First he argues that the full range of consequences was extraordinary and should not be attributable to the defendant. Secondly he argues that Mrs. Martinez' psychological disorder pre-dated the accident and that she failed to prove the extent of the aggravation for which he is liable. His third argument is that the evidence does not support an award of $250,000.00.

■ Defendant's first argument is based on § 435(2) of the Restatement (Second) of Torts (1965) which reads:

The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

This argument fails for two reasons. Section 435 does not limit liability, once it is determined to exist, but is used to determine whether there is any liability at all. Introductory note and Comments to § 435. Even if this section did apply, there is nothing "highly extraordinary" in incurring psychological problems as the result of an accident. Negligent conduct is that which a reasonably prudent person should recognize as involving an unreasonable risk of harm to another, regardless of whether the exact nature and extent of that harm is foreseeable. *See, Lujan v. Reed*, 78 N.M. 556, 434 P.2d 378 (1967); *see generally, Reif v. Morrison*, 44 N.M. 201, 100 P.2d 229 (1940).

There is almost universal agreement upon liability ... for quite unforseeable consequences, when they follow an impact upon the person of the plaintiff.... The defendant is held liable when his negligence operates upon a concealed physical condition, such as pregnancy, or a latent disease, or susceptibility to disease, to produce consequences which he could not reasonably anticipate. He is held liable for unusual results of personal injuries which are regarded as unforeseeable, such as tuberculosis, paralysis, pneumonia, heart or kidney disease, blood poisoning, cancer, or the loss of hair from fright.

Prosser, Law of Torts 260–261 (4th ed. 1971). We note that in order for an act to be the proximate cause of an injury, it need not be the sole cause, but merely a concurring cause. *Galvan v. City of Albuquerque*, 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973). There is substantial evidence that Mr. Teague's negligence was the proximate cause of Mrs. Martinez' psychological problems.

■ *Hebenstreit v. Atchison, T. & S. F. Ry.*, 65 N.M. 301, 366 P.2d 1057 (1959), which holds that when a person's negligence aggravates a pre-existing condition, his liability is limited by the extent of the aggravation, supports defendant's second argument. For the rule to become effective, however, it is necessary that there be a pre-existing condition which was aggravated by the injury. In reviewing the evidence, this court will indulge in all reasonable inferences in support of the verdict, and will disregard all inferences or evidence to the contrary. *Anaconda Co. v. Property Tax Dept.*, 94 N.M. 202, 608 P.2d 514 (Ct. App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980).

■ Dr. Trost testified that Mrs. Martinez' present psychological problems are attributable directly to her accident with Mr. Teague's horse. Dr. Hochman's testimony, viewed in the light most favorable to upholding the verdict, indicated that Mrs.

Martinez had a pre-disposition for psychological disorders. He did not say that her present psychological condition with its attendant physical complaints existed before the collision with the horse. This testimony indicated a susceptibility to psychological disorders, but did not indicate that she was suffering from such disorders at the time of the accident. There is substantial evidence that the accident with Mr. Teague's horse was the proximate cause of Mrs. Martinez' current condition, rather than the cause which aggravated a pre-existing mental state.

The standard for determining whether an award is excessive was set out in *Sweitzer v. Sanchez*, 80 N.M. 408, 409, 456 P.2d 882, 883 (Ct.App.1969), which gives the rules as:

(1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder.

Damage awards are found to be excessive only in extreme cases. *Lujan.* Defendant invites us to compare *Gonzales v. General Motors Corp.*, 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976), where we ordered remittitur, with the present case. We are warned by *Sweitzer*, however, that the comparison of awards is improper because the question of prejudice must be determined from the evidence in each case. In *Gonzales*, we found evidence of prejudice and sympathy by the jury; here there is no such evidence. Nor is there evidence that the jury used the wrong measure of damages. Mrs. Martinez proved $80,000.00 in medical expenses, lost wages, and property damages. Beyond this, the jury was instructed to award damages for psychiatric injuries and for pain and suffering. If a plaintiff in a personal injury case is entitled to recover at all, he is entitled to damages for his injuries, for pain and suffering, and for mental injury arising from the accident. *Jones v. Pollock*, 72

N.M. 315, 383 P.2d 271 (1963). There was substantial evidence to support the jury award of $250,000.00.

*Cumulative error.* Not having discovered any errors at the trial, we find no cumulative error.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, C. J. concurs.

SUTIN, Judge (Specially concurring).

I specially concur.

A. *Mention of "the insurance company" in a doctor's report does not warrant a mistrial.*

In the course of the cross-examination of defendant's psychiatrist, plaintiff read a portion of a report of a non-witness doctor which included the following:

"She felt that she was pressed into getting an attorney, but even this relationship was marred by a great deal of lack of trust on her part where she felt her attorney was siding with *the insurance company* and employing a variety of delaying tactics." [Emphasis added.]

Defendant objected to the question and moved for a mistrial at the close of the day's proceedings. The court was not prepared to rule upon defendant's motion. The following morning after argument, the court stated that it would consider the motion as taken under advisement. Thereafter, the trial proceeded and ended. The trial court never ruled on defendant's objection to the question or his motion for a mistrial. Defendant abandoned his motion. Upon what basis defendant's motion can be raised in this appeal has not been shown.

Even though we assume the trial court denied the motion for a mistrial, defendant failed to show that the trial court abused its

discretion. *Transwestern Pipe Line Company v. Yandell*, 69 N.M. 448, 460, 367 P.2d 938 (1961) says:

> ... A motion to declare a mistrial is addressed to the sound discretion of the trial judge and is reviewable only for an abuse thereof. [citation omitted.] The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision. We find no abuse of discretion by the court in overruling the motion for mistrial.

Defendant did not state this rule or discuss it. There was no abuse of discretion.

Plaintiff's and defendant's lawyer each possessed copies of the doctor's report for several months and were thoroughly familiar with its contents. If defendant wanted to test the use by plaintiff of that portion of the report which included "the insurance company," a motion *in limine* should have been filed. *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977). The issue would have been decided and an order entered. If adverse to defendant, error in the appeal would have been proper. Defendant used the doctor's report. It would be reasonable for defendant to believe that plaintiff would also use it. Anticipation of its use by plaintiff should have warned defendant to seek a resolution before trial, not during trial. To catch a district judge off guard requires a shot from the hip to resolve the issue. This method of procedure fosters reversible error. It does not lessen it.

If defendant was seriously concerned about "the insurance company" being harmful because of its effect upon the jury, he could have requested UJI Civ. 2.8 which reads:

> Whether a party is insured has no bearing whatsoever on any issue that you must decide. You must refrain from any inference, speculation or discussion about insurance.

Defendant did not want to focus upon this issue. But the failure to request the in-

struction is at least an indication that defendant was not worried. To me, it means that defendant only sought, but failed to discover another point to raise in the appeal. I am convinced that the juror of today, who has the above instruction before him during deliberations, will not violate his oath of office and disregard the admonition of the court.

It appears in the instant case that plaintiff and defendant are represented by the same insurance company. For my views of what constitutes reversible error in the mention of an insurance company, see, *Chavez v. Chenoweth*, 89 N.M. 423, 533 P.2d 703 (Ct.App.1976), Sutin, J., dissenting in part.

Defendant was not entitled to a mistrial.

B. *"Res ipsa loquitur" instruction is erroneous but not prejudicially.*

Over objection of defendant, the court submitted UJI Civ. 16.23 on "res ipsa loquitur." It reads:

> The plaintiff relies *in part* upon the doctrine of "res ipsa loquitur" which is a Latin phrase and means "the thing speaks for itself". In order for the jury to find the defendant negligent under this doctrine, the plaintiff has the burden of proving each of the following propositions:
>
> 1. that the injury and damages to plaintiff were proximately caused by a horse, which was under the exclusive control and management of the defendant; [defendant concedes this proposition.]
>
> 2. *that the event causing the injury and damages to the plaintiff was a kind which ordinarily does not occur in the absence of negligence on the part of the person in control of the instrumentality.* [at issue.]
>
> If you find that each of these propositions has been proved, *then the law permits you to infer that the defendant was negligent* and that the injury and damages proximately resulted from such negligence.

If, on the other hand, you find that any one of the propositions have not been proved, or if you find, *notwithstanding the proof of these propositions*, that· the *defendant used ordinary care for the safety of others* in his control and management of the horse, *then plaintiff cannot recover* under the doctrine of res ipsa loquitur. [Emphasis added.]

When stated simply, this instruction reads:

Plaintiff relies *in part* upon the doctrine of "res ipsa loquitur." Plaintiff must prove two essential propositions to establish defendant's negligence.

\* \* \* \* \* \*

If you find that each of these propositions has been proved, then you may conclude that defendant was negligent and that the injury and damage proximately resulted from such negligence.

If on the other hand, you find that one of the propositions has not been proven, plaintiff cannot recover. *Also, plaintiff cannot recover, although he has proven the two propositions, if you find that the defendant used ordinary care for the safety of others.*

It is important to explain the meaning and effect of this instruction:

(1) The jury is told that "The plaintiff relies *in part* upon the doctrine of 'res ipsa loquitur.'" Plaintiff does not rely on *res ipsa* alone. Under UJI Civ. 3.2, on statement of the issues, the jury was also told that plaintiff relied upon three "claimed acts of negligence." During its deliberations, the jury could consider both *res ipsa* and "claimed acts of negligence."

(2) The jury is told that if plaintiff proves the two essential propositions, irrespective of the three "claimed acts of negligence," it can also find the defendant otherwise negligent, and conclude that the injury and damage proximately resulted from such negligence. *The jury is not told that plaintiff can recover.*

(3) However, even though plaintiff proves the two essential propositions which establish defendant's negligence and proximate cause, the jury is told that "plaintiff cannot recover" if the jury finds that defendant exercised "ordinary care for the safety of others." I cannot reconcile a jury finding defendant to be both negligent and careful at the same time on the same subject matter. This portion of the instruction is erroneous, but it strongly favors defendant. Regardless of what plaintiff proves, plaintiff cannot recover under *res ipsa* if the mental attitude of the jury favors an animal owner.

(4) The submission of this instruction was not reversible error. When the verdict of the jury was returned in plaintiff's favor did the jury rely upon *res ipsa*, the three "claimed acts of negligence" or both? Only the jury knows. In a jury trial in which a general verdict is returned, the manner in which the jury discharged its functions is for us an unknowable. No one but the jurors know the effect of the *res ipsa* instruction on their verdict. To learn the knowledge of the jury is to request, in addition to the general verdict, interrogatories which direct the jury to find the basis upon which it arrived at its verdict. *Maxwell v. Santa Fe Public Schools*, 87 N.M. 383, 534 P.2d 307 (Ct.App.1975), Sutin, J., specially concurring.

Inasmuch as we do not know whether the jury relied on *res ipsa loquitur*, one of three "claimed acts of negligence," or both, we cannot arbitrarily say that the jury relied upon *res ipsa loquitur*. To seek a reversal, the burden is on defendant to show that the submission of the instruction was prejudicial error, i. e., that it substantially affected his right so as to result in a miscarriage of justice. *Kight v. Butscher*, 90 N.M. 386, 564 P.2d 189 (Ct.App.1977), Sutin, J., dissenting. It must have some effect upon the final result of the trial. *State Highway Commission v. Beets*, 88 S.D. 536, 224 N.W.2d 567 (1974).

To establish prejudicial error, defendant must show that his rights were affected because the jury actually relied upon *res*

*ipsa.* This cannot be done. Defendant failed to lift the burden. Prejudicial error cannot be established.

## C. *Res ipsa loquitur was properly submitted.*

Defendant argues that based upon the record, it is not possible to say that the event that caused plaintiff's injuries was a kind which ordinarily does not occur in the absence of negligence on the part of defendant.

*Terry v. Dunlap,* 84 N.M. 86, 499 P.2d 1008 (Ct.App.1972) held that there was no basis for an instruction on the theory of *res ipsa loquitur* where there was no evidence that any animal, including a yearling, had ever escaped onto a highway via a cattleguard which was owned and controlled by the State Highway Department, not defendant. If defendant owned and controlled the cattleguard, must plaintiff prove that prior to the accident one or more animals had escaped onto the highway via a cattleguard to establish that the event is "of a kind which ordinarily does not occur in the absence of negligence"? If so, I disagree.

*Akin v. Berkshire,* 85 N.M. 425, 512 P.2d 1261 (Ct.App.1973) relies on *Terry.* The court said:

> The evidence submitted on this point can be summarized in one sentence: Defendants' cow was on highway 41 where it was struck by plaintiffs' automobile. Our decision can likewise be stated in one sentence: Plaintiff has not sustained his burden of proof on the first element of the res ipsa loquitur doctrine. The only evidence in this case is that cows might get out of a fenced pasture if chased by men or animals; that cows have been known to jump fences; and that they will do just about anything you would expect them not to do. Thus, the only evidence is that this accident is of the kind which occurs in the absence of negligence. [Id. 426, 512 P.2d 1261.]

If so, I disagree.

*Carrillo v. Hoyl,* 85 N.M. 751, 517 P.2d 73 (Ct.App.1973) follows *Akin.* I disagree.

It is far more important to balance injury, damage and death by persons using the highway against injury or death of an animal.

*Mitchell v. Ridgway,* 77 N.M. 249, 251, 421 P.2d 778 (1966) said:

> Modern highways and vehicular traffic in New Mexico with livestock permitted to roam at large presents an intolerable situation. . . . We hold that it is for the trier of facts to determine whether the owner of the animal has used reasonable care to restrain his livestock.

If it was intolerable in 1966, it can be considered tragic in 1981. The resolution of this problem rests in the judicial approach of the courts. If the court favors the protection of the animal owner, *Terry, Akin* and *Carrillo* should remain the law of New Mexico. If the court favors the protection of the public, *Terry, Akin* and *Carrillo* should be overruled. In my opinion, the general public should be protected because *Mitchell* is controlling, not *Terry, Akin* or *Carrillo.*

I favor the rule which holds that an unattended animal on the highway is sufficient evidence to allow the jury to infer negligence on the part of those whose duty it is to restrain the animal because unattended animals do not escape their enclosure unless someone is negligent, a conclusion which is supported by an abundance of authority. *Nuclear Corporation of America v. Lang,* 480 F.2d 990 (8th Cir. 1973); *O'Connor v. Black,* 80 Idaho 96, 326 P.2d 376 (1958); *Mercer v. Byrons,* 200 F.2d 284 (1st Cir. 1952); *Bender v. Welsh,* 344 Pa. 392, 25 A.2d 182 (1942); *Vaclavicek v. Olejarz,* 61 N.J. 581, 297 A.2d 3 (1972).

The basic reason for the rule was stated in *Bender, supra,* as follows:

> [H]orses which are properly confined ordinarily do not escape. Hence the presence of an unattended horse on the highway is sufficient evidence to allow the jury to infer negligence on the part of those whose duty it was to restrain him,

**456**

and this has been held in a number of cases .... [Citations omitted.] [Id. 25 A.2d 184.]

The court quoted the following from one of the cases cited:

"Under any but exceptional circumstances, the exercise of ordinary care will serve to keep unattended animals in their proper inclosures. In these days of rapid automobile transportation, the extreme hazard to drivers and passengers of animals straying unattended on the roads at night cannot be overestimated. The driver is placed in a well-nigh helpless position because of the tendency of an animal to spring out of darkness in front of a car when blinded or hypnotized by its headlights. Against this contingency, drivers should be protected, by having our roads clear of such obstructions, and every owner of live stock should make an earnest endeavor to so control their movements with due care that the lives of others may not be thereby endangered." [Id. 25 A.2d 184.]

*Bender* enlarges on the intolerable concept stated in *Mitchell.*

The characteristics of the horse were known only to defendant. The method of escape of defendant's horse based upon defendant's testimony and that of his daughter, is unknown. None of the other horses had ever escaped. Any evidence of the method of escape of the horse, if any, is ordinarily known only to defendant, not plaintiff. Plaintiff had no reasonable method of determining the method of escape. All that plaintiff could discover was the corral and its fencing. If the fencing of a corral is relied upon to contain a horse, the fencing must be shown to have been one that a reasonable man would believe to be adequate to that end. *Vaclavicek, supra.* Substantial evidence established that the fencing was not adequate to contain the horse. This was the negligence of defendant. If the corral has been adequate to contain the horse, "the event causing the injury and damages to the plaintiff was of a kind which ordinarily does not occur."

*Res ipsa loquitur* was properly submitted to the jury.

On the other issues raised by defendant, I concur with Judge Lopez.